Good morning. May it please the Court, my name is Katherine Short and I represent the plaintiff, Walter Hoye. I do plan on reserving five minutes of my time for rebuttal. The City of Oakland has enacted a viewpoint-based restriction of speech in clear violation of the First Amendment. Under this law, pro-life speakers can be, and in Mr. Hoye's case have been, in prison for peacefully expressing their views on the public side of offering an abortion clinic, while other speakers are exempted because the City has decided to privilege speech that, quote, facilitates access to the abortion clinic, while burdening speech that encourages alternatives to the clinic. Nothing in the First Amendment or in controlling case law permits such a result. The City cannot hide behind Hill v. Colorado. As the Supreme Court said in Hill, speech restrictions need to apply equally to all speakers, quote, whether they oppose or support the woman who has made the abortion decision.    MS. SHORT. MR. KANE. I'm sorry, you're going to go ahead. MS. KAGAN. Go ahead. MS. SHORT. I'm just trying to get the lay of the land. You are claiming that on its face, the statute is content discriminatory or as the enforcement policy. MS. KANE. Both, Your Honor, because as is clear from the city's brief, this is not something an enforcement policy is when you say, well, no drinking in the park, but we're just not going to enforce the law on the Fourth of July. What the city has said here is these are not violations that the escorts are committing. When an escort walks up to a woman and says, let me help you into a clinic, don't listen to the demonstrators, the city says that is not a violation. So in that sense you're arguing then that their interpretation becomes part of the ordinance and we can view it as a facial attack on the ordinance. Yes, because, I mean, they've explained in great depth in their papers. They've parsed the words. What does counseling mean? What does for the purpose of mean? They have parsed those terms and said this is what the ordinance means. There is no other interpretation for the city. So it's not simply an enforcement policy. Ms. Short, I don't want to interrupt the flow of your argument except to get this. Could you give us a little bit of an indication of your client's status? It's my understanding that Mr. Hoyer has been preceded against criminally. Correct, Your Honor, and the conviction was overturned. Our lawsuit was filed prior to that entire criminal proceeding, six months prior to the criminal proceeding being initiated. And the current status? The current status. I'm sorry. The current status is the conviction was overturned. We are now in the period when it's up to the court to decide, or basically up to the DA to decide whether or not to retry him. We did not raise any of these constitutional issues in the criminal prosecution. Why? Because we already had a Federal lawsuit going on in which these issues were being litigated. And you think there's something preferable about having this Court address these issues rather than the State court, where certainly Federal questions can just as properly be raised? No. There are notions that it's there are limits on a Federal court's entitlement, obligation, responsibility to proceed with issues that are in some substantial sense State issues implicated by a State criminal prosecution. Again, the train had already left the station when this criminal prosecution began. We were already, again, five or six months into this Federal litigation. We had already had, you know, a TRO motion, which wasn't exactly granted, and then the city went back to the men of the ordinance, then we refiled. I mean, we were already well into the Federal litigation. And I don't think there's anything in the abstention doctrine that required us to then us to pull back and say, oh, no, now we're going to litigate these issues in State court. I mean, in fact, I thought we did the proper thing, which was to, you know, reserve it to the jurisdiction where we had began, where we had begun. But perhaps it's the Federal court's obligation to step back. If the Federal court is informed, which I don't think it – did the lower court know about the prosecution of Mr. Hoyer? It certainly did, because there were exhibits to the motions that were transcripts from the trial court criminal proceedings. So the trial court was certainly aware of this. But in any event, there's no determinative status as to the State trial. It's still – the State hasn't said whether there will be reprosecution or not. Not at this point. All right. We might proceed now. I just want to make one comment about that, which is that neither of you on either side bothered to tell us about the State appellate division opinion. We happened to find it ourselves, and that's not exactly how. Mr. Millen sent a letter to the court. I don't think so. Well, maybe so. Maybe exactly so. I mean, we actually made sure to do that. We only received the remittitor, I don't know, about two weeks ago. And then he notified the court. But that was sometime after the opinion issue. I believe the standard 30 days, yes. We – I'm sorry that that – we notified the court promptly which direction the case was headed. It was after the remittitor, but not when the opinion issue. It was sometime thereafter. Yes. About a month thereafter, to be specific. Yes, Your Honor. Again, we weren't trying to hide it. We were, you know, saying. Shall I proceed? Yes, please. Again, quoting Hill, I think I was in the middle of the quote, that all speakers – speech restrictions must apply to all speakers, whether they oppose or support the woman who's made the abortion decision. This is the level of neutrality the Constitution demands, end quote. And as the court recently held in Citizens United, the government has no power to prefer one speaker over another or to decide for the listener which speakers are welcome and which are not. In passing a criminal statute that prefers pro clinic speech to Mr. Hoy's speech, Oakland has committed the cardinal First Amendment violation and engaged in impermissible viewpoint discrimination. For this reason, the decision below should be reversed, and summary judgment entered for Mr. Hoy. Now, what Judge – was it Judge Breyer below? Yes. Said about all this was that he didn't think that it was proven up, as I understand it, that there was, in fact, either whether you look at it as discriminatory enforcement or a noncontent-neutral interpretation, largely because he didn't give credence to the deposition. And I guess he didn't read the staff guidance and the videotape as doing that. So could you – it might be helpful to walk us through some of that. Well, we find this – the evidence of this policy or this interpretation of the city – first of all, just throughout their briefs, they say very clearly And then what does facilitate access mean? Facilitate access means, according to the city's 30b-76 deposition, means saying things such as don't listen to the demonstrators. The city's response to that in deposition is our policy is clear in what it says.  It's not harassment or intimidation. It is language used to help facilitate their entrance into the facility. Very clear. So don't listen to the demonstrators counts as speech that facilitates access. Likewise, it's your right to have an abortion. The city's response was our policy is clear. That would not be a violation of our policy. And we – and statements such as their information is misleading. Likewise, the city was very clear that all these things do not violate the ordinance. Suppose we were to agree ultimately with Judge Breyer that this declaration – this deposition is not binding on the city. And I understand you have arguments about why it is because – but just hypothetically for now, what – in terms of official documents that are from – that are from the city, what is there? The city's own briefs. The city's own briefs say speech that facilitates access, which in and of itself is a content-based discrimination and a viewpoint-based discrimination. It's a speech that facilitates access. It's a – Suppose it is – suppose it is an interpretation. Should we strike that document or that policy of interpretation and leave the statute as it is? I – I – There were severability clauses, as I recall. And if this were in the policy as a separate paragraph, it could be stricken, I assume. But it's not. The problem is the city defines counseling, the word counseling, one way for Mr. Hoy and one way for escorts. I don't think there's anything that you could sever. Well, you could sever the enforcement policy, which does that, and leave it with the ordinance as it's written. Again, if you – in the city's briefs, it makes very clear it examined the words of the ordinance and said this is what counseling means. Counseling – Right. But suppose we were to say, well, there's no reason to be reading – to avoid a constitutional question, for example, as we want to do. Could we say, well, they may be saying that, but if you look at this actual ordinance, it isn't there. So I guess my question to you is, is it there, or are they misreading the ordinance? I think the problem with that solution is – well, I guess the question is, is somebody going to tell that to the city in an enforceable way? Because they've made it very clear that is how they read the ordinance. Well, although it's somewhat odd. Courts – there are instances in which Federal courts have done exactly that, and one of which I know most clearly is Frisbee v. Shultz, where the Supreme Court did interpret a local ordinance in a way to make it constitutional. Correct, Your Honor. But that was because the city represented to the court that interpretation. I suggest that. The city – that's what happened right in front of the Supreme Court. There's also a case, one Ninth Circuit case, in which we did it in an instance where it wasn't suggested by the city. Well, I'm not – I don't know what case you're referring to, Your Honor. But I mean, I think the city now has had two times. First, it had this viewpoint-based discrimination explicitly written into the ordinance, and then at Judge Breyer's suggestion, they took that out of the ordinance, but then proceeded to enforce it in exactly the same way. I think the city has run out of chances to get it right without a court order. It's three strikes. Well, if, for instance, we do have in the city as in the ordinance, there's some sections that say this means, counseling means or consulting means in sort of an interpretive section, which raises some of the problems you're talking about. Suppose this were that way, too, in a definition section. This means if you want to assist people coming into the clinic and tell them stay away from those other bad people, that's permitted under our interpretation of the term consulting. But if you're telling them don't go in, that's not prohibited. We'll permit one kind of advice, not another. And that were an interpretation. And if that was stricken, that paragraph, the ordinance on its face, let's assume, would not be a violation. Why couldn't that paragraph be stricken? And in the alternative, if it's not a paragraph, it's simply a policy, why couldn't that be stricken? I'm not sure which you're saying, that the paragraph that says it is permissible to go up and say don't listen to the demonstrators? Yes. Yes. If that were put in a paragraph, you say it's a policy now, a city. It's the way the city interprets it. Well, I mean. What I'm saying is if that interpretation were right in the ordinance. I mean, I, again, you could, but I think the court would have to order that result. I don't think the court can simply. I'm sorry. If the court ordered that result and said this paragraph is stricken under the severability clause. Again, that's possible, but that's not how the ordinance is written. So. Then let's go as to how the ordinance is written. I thought you were relying on the enforcement rather than the way it's written. Again, what I'm saying is this is the way the city looks at and reads its own ordinance. And it says counseling. I mean, that's the thing. Even this description. It's not just the viewpoint discrimination. It's that a police officer would have to distinguish between speech that facilitates access versus speech that is, as they say, pro-choice advocacy. You know, they define this as this very narrow channel. It's only telling a woman what to do or not do when she gets in the clinic. You're going back to not what's on the face of the statute, but how it is enforced or interpreted. And what I'm saying to you is there's some interpretations of the statute right in the statute. If this were, instead of an enforcement policy, if this were an interpretation put in the statute, that paragraph could be stricken under the severability clause. I agree, Your Honor. Yes, Your Honor. That, I believe that we still have other problems with the ordinance. But, yeah, in terms of viewpoint discrimination. And unfortunately, I'm down to my five minutes here, so. Well, we'll give you a little more time. Now or later? Okay. Five minutes down, please. Okay, thank you. Is it your view that the city's interpretation is binding on the California courts? I understand that the courts would have the ultimate power to decide that. This court could refer it over to the California Supreme Court for an interpretation. But what we're faced with right now is, you know, this is how they're interpreting it, and we need an injunction to prevent them from doing this. I mean, that is the procedural posture here is we want them to stop enforcing it in a viewpoint-based manner. So that the fact that arrests are being governed by this differential rule, according to your differential principle, is itself a problem, you would say? I mean, that's sort of the distinction between the so at that point it really doesn't become a challenge to the facial challenge to the statute. It becomes a challenge to the enforcement policy. Yes. I mean, the fact that an escort can walk up to a woman, right up to a woman and say, come with me, don't listen to him, please don't harass me. But I'm trying to draw a different distinction and reflecting Judge Pollack's concern, which is that you could have a challenge to the statute as construed by the city, but then the state courts could say, well, the city is wrong about that. But you could also have a challenge to the enforcement policy saying, well, meanwhile, we're getting arrested and discouraged and dissuaded, and that's quite apart from what will turn out if we end up being arrested and have a chance to litigate. Exactly, Your Honor. Yes. That's correct, yes. But it's a different way of looking at the problem, and the standards that apply are somewhat different.  Yes. I think that's correct. I'd like to move on to some of the other problems with the statute. Yes. You have three minutes for the rest of the problem. I'm sorry? You have three minutes for the rest of the problem. Okay. I just the other problem, we and another significant undisputed fact in this case which sets this case apart from Hill is the fact that escorts physically interfere with communication between pro-lifers, specifically Mr. Hoy and patients going to the clinic. They form barriers with their bodies so that one will be unable to see Mr. Hoy's signs or reach for his literature. They make noise. If he stands in one place, they can stand right in front of him. I mean, this is their job. This is what they've admitted that they do. They've said it explicitly. They are there to prevent women from seeing his sign. They are there to prevent communication. This is a fact situation that the Supreme Court did not have in front of it. But why isn't that still the same problem? I mean, that is, if there were an announced non-differentiating enforcement policy, presumably doing that would be a problem. I don't see how, and I have to admit, I was very puzzled by Judge Breyer's comment that escorts could be arrested or would be violating the ordinance by blocking Mr. Hoy with signs. There is no way I can read the ordinance to prohibit standing in front of Mr. Hoy with a sign. I don't see how these are two separate problems. One is the fact that one escort can go up to a woman and say whatever she likes. The other problem we're dealing with is that other escorts who may be 10 feet away from the patient are surrounding Mr. Hoy and preventing communication. And the Supreme Court is very clear. The reason this ordinance, the reason that Ordinance of Hill was constitutional was that there were ample alternatives. Sotomayor. It's only attributable to the city if either they, there is some way that they should be stopping these people from doing that and they're not doing it. Either under this statute or a different one. No, I don't think so. You know, the state action here is there is an ordinance. There is an ordinance that prevents Mr. Hoy from walking up to patients. And meanwhile, we have a situation where he cannot communicate with patients from eight feet away. I mean, this is the same thing the Supreme Court said, you know, talked about a special problem such as wide entrances to a clinic. Well, obviously wide entrances doesn't have state action. If a clinic has wide entrances, that's not the state's fault. Well, that leads me to a slightly unrelated but maybe slightly different question, which is the variety of as-applied challenge that you've made, if it is an as-applied challenge, is to the enforcement policy as content or viewpoint discriminatory. But isn't this view or else the view that you look at what Mr. Hoy was actually doing and it wasn't raising any of the issues that the city is purportedly trying to stop, a different variety of as-applied statute of challenge essentially saying given the actual facts of this case, the statute is being applied unconstitutionally? That's exactly what we did. We said that the ordinance as applied in these circumstances does not leave open ample alternatives. This is different from the viewpoint. And the circumstances including what else is happening on the ground. Exactly. And we said, you know, this is separate from the viewpoint content-based challenge. This is an as-applied challenge for lack of ample alternatives because of the undisputed circumstances on the ground, which is you have escorts deliberately shutting off communication. And I see the clerk distributed to you one photo, which I think is very illustrative of the situation. If you looked just at the left-hand side of the photo with a couple going in the clinic and there's a woman standing here by the tree, this is what might be called what was the facial situation that Hill had in mind. You know, if this woman was a pro-life protester, she had a sign. The sign could be red. If she had leaflets, she could hand them out. If she wanted to speak to the couple, she would be able to speak to a couple. That's the facial side of things. But this is the as-applied side. This is the as-applied. There is no way. Mr. Hoy is actually almost invisible back here in this cluster of signs and escorts. And how could anyone say Mr. Hoy has an opportunity to be seen, his sign could be red, he can distribute literature, and most importantly, to ask for consent to approach? How could he ever ask for consent to approach in these circumstances? So I think this is very tough. Again, this person, as it turns out, you know, just she's very helpful there as a model, is actually the clinic person. That's why there's no interference on that side. The interference is all on the other side. But Judge Breyer said in his opinion, and the city has said definitively, that at least the sign thing isn't happening anymore. Based on what? The city said, Judge Breyer said it, Judge Breyer said the city said it. I mean, I think this, but the sign thing is, is only one aspect of it. Just because even if they didn't have big signs, they still use their bodies to, they've never denied using their bodies to physically block. They've never denied that their goal is to prevent communication. And they can do that simply by standing. If Mr. Hoy's supposed ample alternatives in terms of leafleting is to stand in one spot with his arm out, the city says he can't extend his arm out while the person is within 8 feet, so he has to stand there with his arm out. And if his ample alternative is to do that, absolutely nothing prevents escorts he's pinned to the ground there from surrounding him and preventing the woman from even seeing him. Nothing. And they've made it clear that's what they intend to do and what they do. Mr. Short, help me out so that I know exactly what it is you're invoking the photograph for. Mr. Hoy is the farthest to the right person with the orange guard? No, no, no. That is one of the escorts. You're right. Well, then where is Mr. Hoy? Mr. Hoy is behind that person. You can actually only see the very tip of his head formed in the V between the one the two signs there. It's very difficult to see, but that's where he is. And is he bearing a sign? He has a sign, but it would be invisible to the people coming in the clinic. Invisible? I mean, you've got three other signs, three other pieces of cardboard attempting to block that. I mean, again, even if, let's just assume for the sake of argument that these are not being used anymore, so then his communication would be reduced to, you know, one sign with one message. Forget about leafleting. Forget about speaking because they're making noise to drown out your voice. Forget about asking permission to approach. They're just art alternatives. Is it your understanding that he can – what can he do with literature that he has, a pamphlet, a brochure? It's distinct from a sign. You mean under the ordinance in these circumstances? Yeah. Almost nothing. What does the ordinance – what does the ordinance permit and what does it prohibit? The ordinance says you may not approach within eight feet without consent for the purpose of displaying a sign, handing out literature, or engaging in protest education or counseling. I have difficulty using the word approach to deal with distributing a pamphlet, but let's assume that that's what approach is to contemplate. Then how does the eight feet work? It means he – Does he hold it in? It doesn't for him. That's the point. It does not work for him. Now, the Supreme Court in Hill indicated, well, you could – a person could simply stand near the entrance where people are passing anyway, and you – and as the person passes, you could put out your arm and say, would you like a leaflet? You know, that's presuming no other noise, no other interference. You know, again, this would be, you know, if this person were – that was their concept, their theoretical concept of what was going on in the facial challenge. What you're saying is the reality is very different. But also, isn't there a slight difference in it, either in the statute or in the interpretation, in that here the eight feet is measured from the end of the outstretched arm, so that essentially he can't get his arm into the eight feet either, and he can't – well, can if he stands there still or not anyway? No. I – what the other thing the city has done is take away the safe harbor created in Hill. Hill said there is a safe harbor for leafleting. Plant your feet and you're okay. Then you can proffer leaflets if someone walks by. Now the city of Elkland says, no, that's not good enough. You can plant your feet, but if you put out your arm and someone walks by, that's a violation. So you have to have your arm out already before the person gets within eight feet of you. And the real problem is that even in Hill, as a practical matter, leafleting was really not plausible. I mean, a lot of your problems are with Hill is the problem. Because, I mean, this is slightly worse, but it was still true in Hill that really this practical matter, leafleting, was not practical. Well, I agree with you, though I can see how the Supreme Court could think that, for instance, this woman on the left would have an opportunity. She could put out her hand, make that offer. You can see what's on the leaflet. There would be an opportunity. And, again, I believe we all know that's not the way leafleting is usually done. However, this ordinance takes this is much more severe than Hill in that way. Again, because the two things. One is you already got to measure that distance. Judge, either stand there like a scarecrow and measure that with your arm out all the time or just make sure you get that arm out before that person gets within eight feet. Plus, you have the interference of the escorts. We're way beyond your extra five minutes. When you come back to your final five minutes, could you just sort of give a list of the ways in which you think this ordinance is different from Hill? Yes, Your Honor. Thank you. I mean, one of them you've just said is sticking out your arm. That's one. Just give us a quick list of those differences. Thank you. Thank you, Your Honor. May it please the Court. Greg Richardson for the City of Oakland. And I'm joined today by Catherine Lupin and Benjamin Calvert. Excuse me one second. And in your list, the difference between those things which appear on the face of the ordinance and those which are a result of the interpretation of the ordinance. Okay. Your Honors, if I could start actually with the distinction between the facial and the as-applied challenge. Because there's a lot of discussion in the briefs and the argument about this official enforcement policy. And that official enforcement policy is coming straight from the 30b-6 testimony of how, in a hypothetical, the Oakland police force may or may not. Well, in part. In part. But there is – I did look at the training video, and there's also a written enforcement policy. And it is clear from both of those that the official policy is that the statute is meant to protect the escorts, not to apply to them. Well, I agree to a certain point. It's certainly within the ambit of the ordinance to allow escorts to approach for the purpose of facilitating access. Including saying, and don't listen to that guy? That is no longer the enforcement. And Your Honors asked the question, could a court, could a State court, could this court actually instruct the City of Oakland that they can't do so? Well, I will point out that on page 11 of Judge Breyer's decision below, he actually – that's in the record at ER 13 – he actually said, look, to the extent that Captain Toribio testified that way, that's absolutely wrong. If escorts approach on the face of this ordinance, if escorts approach and they engage in such speech as you don't have to listen to them, they're liars, you have the right to an abortion, all of that, he said that would violate the statute. But what I wanted to point out is – Well, just a minute. Has the City put out a new training video or a new training official policy, whatever this is called, training bulletin, saying any of that? Not to my knowledge. I actually don't know. That's not on the record in any event. But I can certainly tell you that the City has been instructed by the Federal Court not to – or to rather to enforce the ordinance in an even-handed way. There is also no evidence, no evidence in the record that the City ever has not enforced it against escorts, right? This picture that Mr. Hoy actually brought to the Court is illustrative for another reason. There's no picture in there of a police officer watching this. There's no picture of anything, of any official act. So in this case, there's nothing in there that is actually a police officer watching this, and the only thing that's in there is a declaration, at least one, maybe more than one, in which – one in which they called the police and he said, well, it doesn't apply to them, they're professionals. Well, right. But if you actually look at that declaration, and this is what Judge Breyer said below, there was nothing in – the declarants could not actually state what the escorts had – what speech the escorts had engaged in. That doesn't really matter because that isn't what the policeman said about what he understood he was to do. He didn't say, I'm not going to enforce this because they didn't say anything relevant. He said, I'm not going to enforce this because they're professionals. The deposition testimony, I think, is different with all due respect, and I think that's on ER 117. Here's how I understand the deposition testimony, is that the officer was called because they – some of the protesters saw the escorts approaching. And so they called, saying, I don't think escorts are allowed to approach under the statute. The police officer came. Both the declarant – both the declarant protester and the deposition of the other protester said that the police officers talked to the escorts and talked to them. And the police officer then said they were – this – the ordinance doesn't apply to what they just did because they are acting as professionals. I mean, they're not actually professionals. They're volunteers. But there was no evidence in there, no finding by the police officer, no evidence at all about what the speech that the escorts had actually engaged in. We admit it is official Oakland policy. It is permitted under the ordinance for escorts to actually approach and to facilitate access. That may include some type of speech, right? It could be, hello, I'm here. If you would like me to, I can help escort you into the clinic. That would be – that's not content-based. Mr. Hoy could actually do the same thing. You know, now, that would be an admission. I'm sorry. Mr. Hoy could say, I'll help you get into the clinic? Mr. Hoy says, please don't go in the clinic. That's – the difference between I'll help you get in the clinic and I'll help you not get in the – I mean, what his sign actually says is something to the effect of, I can help you find choices. So essentially he's saying – they're saying, I'll help you get in the clinic and he'll say, I'll help you not get in the clinic. Why isn't that content-based? It's not content-based, I believe, because, you know, let's – let me just step back one – one step from that. Under Hill, certainly the U.S. Supreme Court said that you were allowed to facilitate access. In this way, the Colorado statute did not have – did not have escorts, but nor did it preclude escort, nor did it preclude anybody from a clinic going up and facilitating access. Except that the Supreme Court was really intent on saying over and over again that this – there is no viewpoint distinction here. It didn't say it was okay to apply it differently. The escorts didn't deal with the problem of escorts at all, did it? The First Circuit did, however. Yes, it did. And I was going to ask you about that, but I'm asking about the Supreme Court because that's what's binding on us. Sure. Is anything in Hill relevant to this question of whether escorts are to be treated differently, even to the degree of going up to people and saying, I'm going to help you go in? Does anything in Hill say that's okay – that that distinction's okay? Nothing in Hill addresses it that specifically. What I would say, though, is that what the U.S. Supreme Court was determining was content-neutral speech versus content-based speech in Hill I think applies  What they were looking at is can you – can you prohibit the type of counseling, protesting, harassment, and that would be content-neutral. Escorts are not allowed to approach and do anything. Well, under Hill you're authorized to ask a person for consent to speak. Under – could you – I'm sorry. Could you repeat that? Well, the ordinance there says only prohibit you from both sides, from, you know, lobbying them, trying to persuade them of something, but not if the person gives consent. Well, that is the same thing here, right? In Hill, the public – No, I'm not trying to argue with you. Oh, okay. I'm just saying, to modify what you said, that if you can't, neither side can do it unless the individual consents. So an escort could go under Hill and say, may I talk to you about assisting you in, or may I talk to you about your views on why I shouldn't go in. But from 8 feet away. From 8 feet away. Okay. That's – that, I think, is the literal reading of the Colorado statute. I think that that is correct. However, I – I'm sorry, Judge Reinhart, were you? That's the ordinance. It says you can't knowingly approach within 8 feet without the person's consent for the purpose of doing – passing a leaflet or a handbill, or engaging in oral protest, education, or counseling. That would seem to say you can approach within 8 feet if you have the person's consent. Absolutely. And that's the same with the Oakland ordinance. And our position is asking – facilitating access into the – into the clinic itself would not actually – it doesn't fall under the counseling. It doesn't fall under any sort of co-choice. Yes or no, if you say to somebody from 9 feet away, may I escort you into the – into the clinic, and the person says, yes, you have my consent to do that, that would not be a violation, as I understand it. That's – that's true. But that's not the study's view. Nor would it be discrimination, because somebody else from 9 feet away can say, may I talk to you about why you shouldn't have an abortion. And if you say yes, that's all right. That's correct. But that's not the study's interpretation of this ordinance, as I understand it. The study's interpretation, as I understand it, is that the escort doesn't need to stay 8 feet away to go up to the person and say, may I escort you in. That's – that is correct. That is correct. But we don't – that is not – that is content-neutral, or that's not content-based speech, because the – in the same way, any person can approach somebody and say, may I help you into the clinic. But that is – yes. But that's exactly what content-based means. In other words, that anybody can say X, but nobody can say Y. But that's not what the Supreme Court in Hill actually found to be content-based. Because they didn't have the problem before them, did they? They didn't have that particular – that specific thing before them, but nor does the statute preclude it. Anybody can engage in that particular speech. That is incidental to the – to the approach. That is an incidental effect. And Hill said that you certainly can. Hill, O'Brien, numerous cases. Did Hill say more broadly? I'm sorry. I didn't hear you. I didn't say anything yet. Okay. Coherent, anyway. Did Hill say more broadly that it was okay to treat differently speech that facilitates entry and speech that discourages entry? Because that's really what you're saying. It's not exactly what I'm saying. And Hill, I do think, stands for that proposition. It is the speech of facilitating access to the extent that speech has to happen at all. It's incidental to – this is a conduct-based restriction, right? It restricts nonconsented approaches for the purpose of engaging in counseling, harassing, or interfering. But it's not – it's not conduct-based because you can do the same contact. You can go right up to somebody as long as you don't say certain things. But that was also true in Hill. Well, that may be, but it's not conduct-based. I'm sorry. I don't know what you mean by saying it's conduct-based. It is the speech that causes the problem, not the conduct, if you violate it. I may have – I may have misspoken. I may have meant content-neutral there. This statute addresses conduct. To the extent that certain speech that is incidental to that conduct is restricted, Hill found that to be okay. So in Hill, there is nothing in that statute that would have precluded any of – any protester from approaching somebody and saying hello, for instance. This is what the U.S. Supreme Court did. That speech was protected. The speech here of hello, may I assist you, that is incidental to – it's not only incidental to the conduct that is being prohibited, it also furthers the legitimate or the significant interest here that Oakland has, which is facilitating access. I think you used the term professionals a little while ago to describe escorts. I said that the police officer used that term. They're actually not professionals. They're volunteers. There's no such term in the ordinance. That is correct. There's no such term. And the ordinance does not – the definition of counseling in the ordinance says – seems to apply to any conversation on its face. It doesn't make the distinction that you're making between a conversation that says, can I help you get in the clinic, and any other conversation. The definition of harassing in the ordinance is the nonconsensual and knowing approach with an eight-feet for the purpose of passing a leaflet or handbill to display a sign to which you engage in oral protest, education or counseling. Counseling means engaging in conversation. So if you – if a naïve person from Mars read this ordinance, they'd think it did apply to an escort going up to somebody and saying, can I help you go into the clinic. And I think – so Judge Breyer addressed this below and said – and he addressed that as a vagueness concern and saying that he actually had some legitimate concern about that. But what he said is if you look at the statute as a whole, you look at the preamble, you look at what the purpose of the statute was, it's quite clear to a person of reasonable intelligence what is actually prohibited. All right. So you think that despite the fact that you have some problems with incorporating the deposition testimony about how the ordinance is enforced, you – you are committed to the proposition and the city is committed to the proposition that to the degree that the escort – that the escorts can approach somebody and can speak to them to the degree of facilitating their entry into the clinic. That is correct. Including, you know, I'll help you get in the clinic and, you know, whether they can also say don't listen to that guy is a different problem. Right. It's essentially – it's the same thing as a hello – whoops, sorry – a hello, may I assist you into the clinic. But Mr. Hoyt can't come up and say I'd like to talk to you about why you shouldn't go in the clinic. If it's – if it's unconsented, no. Right. That is correct. So that distinction you're committed to? Yes. The distinction between – Well, you added the factor if it's unconsented. There are three different problems. One is if an escort just goes up and engages in conversation and says I'd like to help you get in, whereas Mr. Hoyt could not do that. The second problem is if the person goes up and says I'd like your consent to help you get in. And the third person is if the – third problem is if the person who wants to assist the individual in getting in asks from eight feet away may I approach you and give you assistance, at which point I assume if he's gotten consent from eight feet away he can say anything the But you're not drawing that line in your implementation. Mr. Hoyt could also ask from eight feet away may I approach you and talk to you and tell you why abortion is the – is an evil thing and God has told us that. If Mr. – if the person is willing to listen to that and said yes, you may come and tell me that, and the question's from eight feet away, there's no limitation. That is correct. As to the last – I would just point out that your first problem – oh, I'm sorry, Judge Palmer. No, no, go ahead. Your first problem, you said that – I believe what you said was that the escorts can go up and engage and, you know, may I assist you. And you said that Mr. Hoyt Not without – not without consent from eight feet away. No, the escorts – the escorts – if the escorts are engaging in facilitating access only. Yeah, I know. That's your explanation, that there's a distinction between coming up from two feet away and trying to assist and trying to talk them out of it. You know, that's your basic distinction, which may raise a problem. What I'm saying is if that were done from eight feet away, it wouldn't raise a problem. That is correct. It wouldn't raise a problem on either side. But the statute would allow it in either case. Absolutely. Absolutely. If I – if I – I think you – I think you said – you tell me if I've got it wrong that the prohibition on extending one's arm as part of an approach, extending one's arm with a pamphlet, that's a regulation of conduct, not of speech. Is that correct? The – well, one, I didn't actually say that, but I can certainly – I can certainly address it. That it is a regulation on conduct if it's a non – the conduct is a non-consensual approach. I will say that the statute at issue in the Colorado case and the Hill case also applied to passing a leaflet. And so there – you certainly can regulate the manner in which the distance, right? And I will say that Mr. Hoy, for instance, could be standing there with his arm out, and if somebody passes, he is not approached under the ordinance at all. But I'm – Mr. Hoy is standing there with his – with his arm clasped to his chest saluting the American flag. And then a prospective patron of the center comes along and Mr. Hoy says, I – here's a pamphlet, and holds out his hand. And as I understand it, that would be prohibited by the ordinance, and the basis for that would be we're regulating conduct, not speech. Is that correct? That's correct if it's unconsented. That's right. And if his arm is less – the end of his arm is less than eight feet away. But I point out in the Madison case, the U.S. Supreme Court, the buffer zone was 15 feet, right? Which is so – if we're talking about eight feet, and we're talking about now the length of an arm. But that was an – that was an injunction. And it was an instance in which there had been a great deal of violence and so on. Mr. Hoy himself has never engaged in any violence as far as I know. Suppose Mr. Hoy proposes to hand out a pamphlet saying, which says, I'm running for the state legislature, and I'm running on a pro-life program. And this pamphlet explains why I hope you'll vote for me. Is that – is that permitted under the ordinance or not? Well, I think that's a very good question. I would not. Well, I'm glad. I think it's a very good question. I – and my answer to that, I hate to give a lawyer's answer, is I don't – I think it may depend on what the actual content or rather the purpose of the statute. Exactly. First of all, I doubt that. I doubt that, because literally speaking, it wouldn't. Because it's still conversation. It's still harassing under the definition of the statute. But if you're right and it depends on the content of the pamphlet, then we've really got a problem. Well, you don't – we don't necessarily have a problem, not under the – not under Hill. That would depend on the person we review that is allowed under Hill in terms of whether or not something is content-based or not. Right? I mean, I think that that is – in my mind, it would just depend on what exactly was said in the leaflet. Well, suppose he wasn't a pro-life person. Suppose he was just a guy who was running for office, and he is standing there within eight feet handing out leaflets. Wouldn't this then apply to him? He didn't say anything about abortion at all. He's just a guy who's trying to hand out leaflets because he's running for city council. Right. As long as he's not doing it to counsel, harass, or interfere under the ordinance, the right to access, then I would say no. But it's – counseling is engaging in conversation. It's displaying signs to a distributing literature to individuals seeking access to passage from or services with the reproductive health care facility. He's doing that. He's standing there handing out literature to individuals seeking access to the reproductive health care facility. Right. With the – to prevent access. That is – That's the part of the statute that was taken out because you apparently agreed with Judge Breyer that you had a big problem with it. That's not there anymore. So I'm not sure what your question is. In other words, you're saying that the ordinance only applies if they're trying to talk people out of accessing the clinic. But in fact, it used to say, in an effort to harass, intimidate, or persuade that individual not to access just reproductive health services, and that's now out of the ordinance after Judge Breyer said that he had big problems with that. That's correct.  Now, I was – the hypotheticals have to do with whether or not, you know, I don't have all of the – all of the facts. And so in that particular case, it would depend on the knowing – it would depend on the intent, I believe. That's what the – this is an intent-based criminal statute. Well, where's intent for what? Well, Judge Brezan's been asking you, where does it say or does it say that you can't do these things in order to discourage people entering the clinic from entering? You're saying that that's really implicit in the ordinance. Well, it's – So it's not just an ordinance that says you can't go up and talk to people when they're trying to enter the clinic. It says you can't talk to them for the purpose of dissuading them from entering the clinic. That – or the purpose of interfering – it is explicit in the preamble, right? The preamble actually sets forth this is the reason for this. So you're saying that taking out what you say you took out because of Judge Breyer's recommendation, let's say, is really still there? The – I'm not sure why that particular – why that particular provision was taken out, actually. I'm not – my – I'm not sure why that was considered viewpoint. Because it was a TRO hearing. Oh, no. And in the TRO hearing, Judge Breyer evidenced some concern, and I would say that I at least share that concern. I understand. I'm sorry. I misspoke. I understand literally how it got taken out. I don't – I don't recall why that particular thing. So you're essentially now arguing that we should consider the ordinance as if that language was still there. No, I'm not arguing that. I think you should consider the ordinance on the face of the ordinance itself. But it will be enforced as if the language was still there, and that's okay. And that's what you're saying. Well, then I misspoke. And let me back up. Because I don't think that it – the ordinance should be enforced as the ordinance is, as it says on its face. Well, on its face, if somebody is running for office and goes up to somebody within eight feet and hands them a leaflet, that is a violation of the ordinance on its face. If that is – if that's how you're interpreting it, then that would be a violation of the ordinance on its face.  You say that's not how you or the State is interpreting it. No, my understanding is that it was for knowing to – that the problem that is being addressed here is access into the health clinic itself. That is what the issue is. I see that I am way over time if you all have any other questions. Well, this is a fairly significant question, I think. Okay. Well, what we've been talking about, you see the ordinance as, on its face, not distinguishing between – among the various reasons you want to go up and talk to somebody. But in implementation, it does distinguish between, based on the purpose for which you want to go up and talk to the person. If you want to go and say, vote for me in the gubernatorial election, I've got a tremendous amount of money and I'm really going to help the people of the State, that would be – that would be permissible. But if you want to say, vote for me because I'm against abortion and I think you should, you know, not go into that clinic, that would not be permissible. My – under the Colorado statute at issue in Hill, that was the same issue that was found to be content neutral, right? There it was – if somebody was approaching a nonconsensual for the purpose of passing a leaflet, a hand built to, displaying a sign, or engaging in oral protest education or counseling. So one could make the argument – indeed, one did make the argument the other side in Hill that, well, so what you are actually addressing here is you are allowing noncounseling speech, but you're not allowing counseling speech. That's content-based. But the U.S. Supreme Court said no. Yes. But counseling speech, precisely because counseling is as broad as it is, it did not address any question like the kind that we're talking about. In other words, they didn't say, well, counseling includes telling people to go to a clinic but doesn't include people not counseling and not to go into a clinic. I'm sorry. Or counseling – nothing in Hill approves the notion that counseling means telling someone not to go into the clinic but doesn't include telling them to go into the clinic. Or that counseling includes telling people to go into the – not to go into the clinic but doesn't include telling them to vote for me. Nothing in Hill addresses that. But the ordinance also does not – does not countenance going up and saying, come into the clinic. The escort's going up and saying that. That's not what the ordinance says. It is – the ordinance allows them to facilitate access. To the extent some speech – and we don't have to decide right now what that some speech is because that would be an as-applied challenge that isn't before the court. But to the extent some speech is exchanged between the escort and the woman trying to enter the facility, that's incidental to the conduct. And the conduct that is being prohibited here is the same conduct that was – Colorado was prohibiting in the Hill case, which is the nonconsensual approach for the purpose of – and here it's actually – I would say it's less restrictive on speech than it was in Colorado because Colorado defined it only as speech-related activity, right? It was passing a leaflet, hand bill too, displaying a sign, engaging in oral protest, education or counseling. Here we have a definition that includes interfering, which is defined as interfering means to restrict a person's freedom of movement. So this is – that's evidence on its face that this is targeted at conduct-related stuff. Our position is that speech from escorts, that certain speech that may help – you know, that is a common hello or an exchange that would help facilitate access is incidental to and is actually – promotes the purpose of the statute, which is to facilitate access. Thank you. Thank you very much. Your Honor, I have – I have the chart here, but if I may, I'd like to respond to a few points first. All right. Please. First of all, I want to make very clear that the city's position always has been that these are unconsented approaches by the escort. There's no idea of implied consent or anything like that. We asked that in the discovery. It is in the record, though I don't think it made it to the excerpts of record. The city specifically denied any idea of presumed consent for escorts to approach. I just want to take that off the table. Okay? The second thing is, clearly, the city has confused the idea of a neutral governmental interest, such as facilitating access to the clinic, with the idea that the city may then distinguish between private speech and private speakers based on their expression of those ideas. City governments can have all sorts of interests, often conflicting interests. We want to preserve the city's bucolic environment by excluding business. We want to increase the tax base by, you know, bringing in new business. The city – whichever interest the city chooses, it cannot then turn around and discriminate against speech that contradicts that interest and privileged speech that is in line with that interest. And that's clearly what the city is doing here. A third point I want to make about the city's 30b-6 deposition testimony, the mere fact that the city objected doesn't mean that that was a valid objection. And you have to look very carefully at those objections. We also defined very carefully what we were looking at, how we had defined what the question was. So, you know, what was permitted and unpermitted. Fourth, the idea that Judge Breyer somehow narrowed the scope of the statute I think is misleading. Judge Breyer totally agreed facilitating speech is okay, just don't get to the point of advocacy. And he made clear that in his view facilitating speech did include things like saying don't listen to the protesters, don't take their information, because he said on its ER-14, even if the guidelines, that means the escort guidelines that were in exhibit, were admissible evidence, they are not proof that the escorts engaged in advocacy. So here we have, here they are saying that even if they were saying these things, he didn't consider that to be advocacy. Where do they get these escorts? When do the escorts join them? Join the clinic? No, the individuals to help them in. Where do they? I think if you watch the video, you can see where the escorts will go out. While Mr. Hoy is standing on the sidewalk, the escorts will go out to meet the patients as they're getting out of a car. They're basically hanging around outside the clinic. Yes. But is that more than 8 feet away? No. No, no, Your Honor. They go right up to the patients as close as they need to. Wait until they get within 8 feet before they go to the patients? No. Again, in the video you can see the escorts go out to meet the patients, again, as soon as they're identified as patients. And they go out within 8, and then they go up within 8 feet and say, hello. Suppose they went out 10 feet to the, to where the car is. A person gets out of the car. It's more than 10 feet from the entrance or wherever. If they're 10 feet away, they could go out. The escort could go up and say, may I escort you in? And they would speak to you about anything. Yes, if they stay 10 feet away, as Mr. Hoy can. No, no. If they join them 10 feet away. Is there anything wrong with that? 10 feet away from what? Join? The ordinance actually applies within 100 feet of the entrance, right? Correct. And the 8 feet is you can't go close to 8 feet to them within that number of feet. Right. So that if they were 100, if they, if these people were 100 feet away, the escorts could go up to them within 8 feet of them and say. I see what you're saying. Yeah, yeah. More than 100 feet from the entrance to the clinic, there are no restrictions for anybody. Or they could ask them from 8 feet away. Or they could ask for permission to approach from 8 feet away. But they don't, and the city doesn't require it. What if we were in some fashion to agree with you, and then the clinic developed a policy of, I mean, often when you go for medical care, you have to fill out some forms ahead of time. And so they sent everybody a form on which they consented to being, meeting with the escorts when they got there. I think there would be a difficulty in an escort knowing which patient had signed a consent form. I mean, if someone drives up in a car, how would an escort know that this is the person who is? But if the person were, if there were some way to deal with that, presumably that would be okay. I mean, an advanced consent would be okay. If they could get consent, yes. I don't see how that would, that would be consent. But that isn't the situation we're dealing with here. So, and that is certainly not the, you know, and again, the city's policy is not, and the interpretation does not require that. Moving on, also I would like to make the point we also had, as you know, a number of vagueness arguments. And I do believe that the city's argument here has illustrated those vagueness arguments very well, that the city has a general intent of what it intends to do, which is restrict as much of Mr. Hoy's speech as it can and not the escort speech. And that's their general intent. And somehow we are all supposed to intuit what that means in practice. As far as the differences with the Hill decision, again, we discussed the extension of the hand problem, which we believe is, we believe that falls under the facial – it could be facial or applied, but it is, it does extend to a facial problem because of things like the training video and the city's own interpretation that it says that the measurement of hand being more than 8 feet away means that the – you can't extend your hand while you're standing within 8 feet of the person. And that's found – Kennedy, do you have your hand out for if you're holding it before the person – Gets there. Gets there. That's all right. Yes. That apparently is all right. That's under the city's interpretation, as long as they're more than 8 feet away from the end of your leaflet. So if you see someone 10 feet away, you can have your arm out. Correct. If your arm is less than 2 feet long. Which, again, it removes that safe harbor that Hill provided, you know, that as long as your feet were stationary, you could leave home the instant replay and the video cameras and the tape measures, you know. But it's all from knowing, so it's not bad. Yes. What else? The second was, again, our as-applied challenge about the ample alternatives, which relates to the conduct of the escorts. We – that simply was a factor that was not there in Hill, the difference between Hill's facial challenge and saying, well, there are ample alternatives, and here we have a situation where you can see, again, watching the videos, Mr. Hoyt doesn't have ample alternatives because of the conduct of the escorts. Another facial distinction is the difference between the limitation to reproductive health facilities, and it's actually even narrower than that because it has to be a place that does abortions, right? Correct. The definition of reproductive health care services is simply termination of pregnancies. So that is another distinction between this case and Hill. And, again, on his face. Another is, as we've discussed at length, the viewpoint discrimination, that the difference between how it applies to escorts and speech with facilitates access versus Mr. Hoyt's speech. I think it also – we've got it – we've built up a record as applied in terms of content-based, that the city does define content in various ways that would make that we're not there in the record in Hill in terms of its facial challenge, where it simply said, well, there's either, you know, this speech that goes on outside clinics or there's random social discourse. What we've talked about, we asked in the 30b6 deposition, what about if someone was trying to sell something? And the response was, no, that wouldn't be a violation. So we've, I think, fleshed out in an as-applied way how the city interprets that to be content-based. And, again, elevating commercial speech over non-commercial speech. And then, finally, the as-applied challenge to simply the – this is another part of the viewpoint – I'm sorry. The viewpoint content-based is facial, but we also believe it's as-applied in terms of, again, as was pointed out, the incident with Officer Johnson. You know, the escorts were seen approaching. His response was, they're professional people. This is the city's enforcement policy. We don't enforce it against these people. So I think those are all significant differences between this case and the Hill decision. All right. One last question. The photos are all of this one clinic, but there are other clinics in Oakland as well. There are other clinics in Oakland. Yes, Your Honor. With somewhat different configurations, I assume. Yes. Though I have to admit, I don't believe we have anything in the record about the different configurations of clinics. But we do have in the record that there were four clinics at the time of the city's deposition. Mr. Hoye appearing at all of them? No. Just in this one? No. Yes. Yes, only at the one clinic. Okay. Okay. We're through, right? I'm sorry? We're through? Yes, I believe we are. Thank you, Your Honor. Thank you very much. The case just argued will be submitted.
judges: Pollak, Reinhardt, Berzon